```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ANTHONY FOX,                        :
                                    :
                 Plaintiff,         :   04 Civ. 6718 (MBM)
                                    :
      -against-                     :   OPINION & ORDER
                                    :
BRIAN FISCHER (Superintendent       :
Sing Sing Corr. Facility),          :
DR. PERILLI (Facility Health Dir.), :
DR. BAKSHU (Facility M.D.),         :
P.A. MUTHA, N.A. E. HANSSEN,        :
and THOMAS EAGAN (C.O.R.C.          :
Dir. D.O.C.S.)                      :
                                    :
                 Defendants.        :
-----------------------------------X
```

ANTHONY FOX
(Plaintiff pro se)
03-A-1880
Coxsackie Correctional Facility
HS02-3
P.O. Box 999
West Coxsackie, NY 12051

ELIOT SPITZER, ESQ.
Attorney General for the
State of New York
KIMBERLY ANN DASSE, ESQ.
Assistant Attorney General
120 Broadway
New York, NY 10271
(212) 416-8552

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Anthony Fox sues six individuals employed by the New York Department of Corrections (DOCS) under 42 U.S.C. § 1983 (2000). He alleges that defendants displayed deliberate indifference to his medical needs and conspired to deprive him of adequate medical treatment, thereby violating his Eighth Amendment rights. Defendants move to dismiss the complaint for failure to state a claim, and on the basis of qualified immunity. Because no relief is possible under any set of facts consistent with plaintiff's complaint, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), the motion to dismiss is granted.

I.

The facts as set forth in plaintiff's complaint are as follows. Fox was diagnosed with a chronic sinus problem in July 2002, while incarcerated at Rikers Island. (Compl. ¶ 1) He was transferred to Sing Sing Correctional Facility in June 2003, and took sick call at Sing Sing several times between June and November 2003. (Id.) Fox saw an ear, nose, and throat (E.N.T.) specialist in November 2003. At that appointment, plaintiff received "no medical speciality treatment"; the specialist directed him to keep taking the medications that he had previously been prescribed for his sinus condition -- Allegra and Flonase. (Id. ¶ 2)

Shortly after his appointment with the E.N.T. specialist, Sing Sing medical personnel started giving Fox

Claritin for his sinus condition instead of Allegra.  See id. ¶
2; id. ex. B.  According to Fox, Sing Sing medical staff informed
him that this substitution was a cost-saving measure.  (Id. ¶ 2)
Plaintiff alleges that between November 2003 and July 2004, when
he filed his complaint, he suffered "a significant decline in his
hearing in his right ear and also was plagued by two painful ear
infections . . . ."  (Id. ¶ 3)  He received x-rays on January 11
in Sing Sing's hospital ward (id. ¶ 7), and according to Fox, the
ear infections were "unsuccessfully treated with antibiotics."
(Id.)

Plaintiff filed an Inmate Grievance Complaint at Sing
Sing on February 11, 2004, complaining that he had improperly
been denied Allegra, which was the only medication that helped
his sinus and hearing problem.  (Id. ex. A)  Plaintiff maintained
that the State's decision to substitute Claritin for Allegra for
reasons of cost was "not a legally acceptable reason" to deny him
access to "essential medication."  (Id.)  Plaintiff complained
also that he had been deprived of access to an E.N.T. specialist
"beyond [a] reasonably timely period."  (Id.)  On March 4, 2004
the Inmate Grievance Resolution Committee (IGRC) found that
Claritin was an acceptable substitute for Allegra, noting that
Claritin is "on formulary and has the same action as Allegra and
is the accepted substitution."  (Id. ex. B)  The IGRC noted also
that Fox had been given two courses of antibiotics for his
ailments, and that according to Nurse Administrator E. Hanssen,
there was no need for Fox to see a specialist.  (Id.)  On April

2

21, 2004, the Central Office Review Committee (CORC) of the Inmate Grievance Program accepted the IGRC decision on Fox's complaint, and asserted that there was "no medical necessity for a specialist appointment at this time." (Id. ex. C)  The CORC advised Fox to use the sick call procedure for any further medical concerns.

Fox was transferred to Coxsackie Correctional Facility in March 2004 (Pl. Response at 2[1]), and was given a hearing test on May 14, 2004 (Compl. ¶ 3).  In August 2004 he was taken to Albany Medical Center and treated for his "still prevalent ear infection." (Pl. Response at 2)  At that appointment, according to plaintiff, he was given prescription ear drops, his inner ear was drained of fluid, and a tube was inserted into his ear for future drainage.  As of December 2004, the drainage tube was still in plaintiff's ear. (Id.)

Plaintiff complains that he was denied access to "requested and prescribed E.N.T. treatment for two painful ear infections and a continuing sinus problem, that is still being ineffectively treated." (Pl. Response at 3)  He alleges that all six defendants "through oral and written communications in regards to plaintiff's medical grievance conspired to deny and delay medical treatment . . . " (Compl. ¶ 3), and thereby

---

[1] The court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants.  See Verley v. Goord, No. 02 Civ. 1182, 2004 U.S. Dist. LEXIS 857, at *15-*17 (S.D.N.Y. Jan. 22, 2004) (collecting cases from this District applying this rule).

3

violated his Eighth Amendment rights.

Specifically, plaintiff alleges that defendant Fischer, the Sing Sing Superintendent, conspired with defendant Nurse Administrator E. Hanssen to ignore plaintiff's medical history and deny his grievance (id. ¶ 6); that defendant Hanssen determined improperly that Fox was not in need of further treatment without having examined Fox or his medical records (id. ¶ 9); that defendant Perilli, Sing Sing Health Services Director, joined in the conspiracy to deny Fox treatment (id. ¶ 7); that defendant Bakshu, a doctor at Sing Sing, and Mutha, a physician's assistant at Sing Sing, intentionally denied plaintiff's requests for E.N.T. specialist referrals and treatment; and that defendant Eagen, New York State Inmate Grievance Program Director, conspired with the above defendants to deny Fox treatment without conducting a personal review of Fox's medical records.

Defendants move to dismiss Fox's allegations for failure to state a claim; they argue also that they should receive the benefit of qualified immunity.

II.

As explained below, even the most liberal reading of plaintiff's complaint does not give rise to either an Eighth Amendment or a claim that defendants conspired to violate plaintiff's civil or constitutional rights. Moreover, the in forma pauperis statute, which allows indigent individuals to file federal lawsuits without paying the accompanying filing fees,

provides that the court shall dismiss any action or appeal that
"(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). As explained below, this lawsuit, filed under §
1915, warrants dismissal on at least two of the above grounds.

B. Eighth Amendment Claims

Section 1983 authorizes a suit in law, equity, or
"other proper proceeding for redress" against any person who,
under color of state law, "subjects, or causes to be subjected,
any citizen of the United States . . . to the deprivation of any
rights, privileges, or immunities secured by the Constitution and
laws . . . ." 42 U.S.C. § 1983. Fox alleges that, by causing
him to suffer continuous ear pain for approximately 14 months,
defendants imposed cruel and unusual punishment upon him, in
violation of the Eighth Amendment guarantee against cruel and
unusual punishment. (Fox Response Br. at 3)

Although "society does not expect that prisoners will
have unqualified access to health care, an inmate can
nevertheless prevail on an Eighth Amendment claim arising out of
medical care by showing that a prison official acted with
deliberate indifference to the inmate's serious medical needs."
Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (internal
citation and quotation marks omitted). An inmate has serious
medical needs if he suffers from "a condition of urgency, [or]

one that may produce death, degeneration, or extreme pain," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks omitted), and an official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to inmate health or safety . . . .'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

A prisoner has a right to medical treatment, but not to the treatment of his choice.  As our Circuit has held:

> The prisoner's right is to medical care -- not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983.

United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 867-68 (2d Cir. 1970) (internal quotation marks omitted); see also Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks omitted); Todaro v. Ward, 565 F.2d 48, 53 & n.5 (2d Cir. 1977) (affirming dismissal of prisoner's deliberate indifference claim based in part on denial of access to specialist treatment); Simmons v. Artuz, No. 98 Civ. 777, 1999 U.S. Dist. LEXIS 6533, at *9 (S.D.N.Y. May 4, 1999) ("It is well established that mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation.").

The usual vehicle for challenging a medical judgment is a malpractice action, and as the Supreme Court has held, "[m]edical malpractice does not become a constitutional violation

6

merely because the victim is a prisoner." Estelle v. Gamble, 429
U.S. 97, 106 (1976); see also Hathaway, 99 F.3d at 553 ("[M]ere
allegations of negligent malpractice do not state a claim of
deliberate indifference . . . ."); Aviles v. Scully, No. 87 Civ.
160, 1988 U.S. Dist. LEXIS 15515, at *13 (S.D.N.Y. Aug. 17, 1988)
("[A] challenge to a decision based on medical judgment does not
implicate the [E]ighth [A]mendment's cruel and unusual
punishments clause but constitutes, at most, a medical
malpractice claim which may be cognizable in state court but not
in a federal § 1983 action.").

Fox has no cognizable Eighth Amendment claim. By Fox's
own admission, he received extensive medical treatment for his
sinus and ear problems: He saw two E.N.T. specialists; he used
the sick call procedure regularly; he was given two courses of
antibiotics; a set of x-rays was taken and he received a hearing
test; he took three prescription medications; he had his ear
drained by an E.N.T.; and he had a drainage tube placed in his
ear. Unfortunately, Fox's pain and hearing loss persisted
despite this treatment, but such is sometimes the nature of sinus
disorders. Defendants were far from deliberately indifferent to
Fox's medical needs; arguably, they provided him with more care
than the average non-incarcerated individual with sinus problems
would receive. If Fox did suffer hearing loss as a result of his
condition, as he alleges, he may have a medical malpractice
claim, which he may pursue in state court. But the treatment he
received at Sing Sing was more than adequate to satisfy Eighth

7

Amendment standards.

B. Conspiracy Claims

Plaintiff claims that defendants Fischer, Hanssen, Perilli, and Eagan conspired to deny him medical treatment, in violation of his civil and constitutional rights.

As the Supreme Court has held, 28 U.S.C. § 1915 allows judges "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Fox's amorphous allegation that defendants conspired to deny his grievances and his medication is exactly the sort of claim that this veil-piercing power is designed to puncture. Indeed, our Circuit has affirmed the dismissal under § 1915 of an incarcerated plaintiff's lawsuit implicating multiple correctional-employee defendants in "wide-ranging conspiracies, clearly without foundation, to violate his constitutional rights." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998).

Moreover, even if not filed in forma pauperis, a "'complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (quoting Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)). A plaintiff must "make

8

an effort to provide some details of time and place and the alleged effect of the conspiracy," Dwares v. City of New York, 985 F.2d 94, 99-100 (2d Cir. 1993) (internal quotation marks omitted), including "when, where, or how the conspiracy was formed." Hason v. Office of Prof'l Med. Conduct, No. 02 Civ. 10007, 2004 U.S. Dist. LEXIS 24653, at *5 (S.D.N.Y. Dec. 6, 2004) (citing Pollack v. Nash, 58 F. Supp. 2d 294, 302 (S.D.N.Y. 1999)).

In this case, plaintiff's claim that defendants conspired to deprive him of Allegra and access to an E.N.T. in order to cut costs is without merit, and warrants dismissal under both § 1915 and the general standards for conspiracy claims described above. Plaintiff's allegations are vague and conclusory: He does not state when or how defendants formed the alleged conspiracy to switch his medication, nor does he provide any details as to the execution of the conspiracy.

Furthermore, because defendants did not do anything illegal, any agreement between them in reference to plaintiff's treatment would not be a conspiracy. As mentioned above, disputes between prisoners and corrections officials over the scope and type of medical care are not actionable under the Eighth Amendment. Hyde, 429 F.2d at 867-68. Plaintiff's conspiracy claims are dismissed.

C. Qualified Immunity

Finally, all defendants in this case receive the

benefit of qualified immunity. Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As explained above, defendants provided plaintiff with extensive medical care and certainly did not violate his Eighth Amendment rights. They are not liable for civil damages in this action.

\*   \*   \*

For the foregoing reasons, defendants' motion is granted and the complaint is dismissed.

SO ORDERED:

Dated: New York, New York
June 14, 2005

Michael B. Mukasey,
U.S. District Judge